UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANTHONY LIVERANO,

                Plaintiff,                        MEMORANDUM
                                              AND ORDER
      -against-                          23 CV 7884 (RML)

COSTCO WHOLESALE CORPORATION,

                Defendant.

-----------------------------------------------------X

LEVY, United States Magistrate Judge:

        This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636.

(See Consent to Magistrate Judge Jurisdiction, dated Nov. 14, 2023, Dkt. No. 12.)  Presently

before the court is defendant's motion to compel arbitration.  (See Motion to Compel Arbitration,

dated July 3, 2024, Dkt. No. 18.)  For the reasons stated below, defendant's motion is granted.

## BACKGROUND

        Plaintiff Anthony Liverano ("plaintiff") commenced this personal injury case in

New York Supreme Court, Richmond County, on April 27, 2023.  (See Complaint, dated Apr. 27,

2023 ("Compl."), Dkt. No. 1-1.)  Defendant Costco Wholesale Corporation ("defendant" or

"Costco") removed the case to this court on diversity grounds on October 23, 2023.  (See Notice

of Removal, dated Oct. 23, 2023, Dkt. No. 1.)  Plaintiff alleges that he was seriously injured

when he slipped and fell due to an unsafe condition while shopping at a Costco store at 2975

Richmond Avenue in Staten Island, New York on December 5, 2022.  (Compl. ¶¶ 12-15.)

        Defendant contends that plaintiff was shopping at Costco in his capacity as an

independent contractor for Maplebear, Inc. d/b/a Instacart ("Instacart"), a technology company

that matches customers with personal shopping and delivery services through a smartphone app,

when the alleged incident occurred.  (Defendant's Memorandum of Law in Support of Motion to

Compel Arbitration, filed July 3, 2024 ("Def.'s Mem."), Dkt. No. 20, at 1.)  It argues that

because plaintiff was providing independent shopping services for an Instacart customer when he

was allegedly injured, his claim is subject to the mandatory arbitration provision of the

Independent Contractor Agreement ("ICA") between Instacart and plaintiff.  (Id.)

 Plaintiff does not deny that he was shopping for an Instacart customer in Costco

on December 5, 2022.  (See Transcript of Deposition of Anthony Liverano, dated Apr. 10, 2024

("Liverano Dep."), Dkt. No. 20-4, at 38-42.)  Nor does he deny that he electronically signed the

ICA on April 5, 2020, when he registered as an independent shopper on the Instacart app.  (See

Declaration of Jerica Sunga, dated Jan. 31, 2024 ("Sunga Decl."), Dkt. No. 20-2, ¶ 6, Ex. A.)

Rather, he argues that he was simultaneously shopping for himself and for an Instacart customer

on that occasion, and that he recalls "with particularity and certainty" that when he slipped on the

liquid substance in the store he was "in the strict process of obtaining [his] own personal

shopping items."  (Affirmation of Anthony Liverano, dated July 26, 2024 ("Liverano Aff."), Dkt.

No. 21, ¶ 15.)  Specifically, plaintiff states that he "was in the process of obtaining cheese in the

dairy section for [his] own personal use," which "had nothing to do with any of [his] Instacart

duties."  (Id.)

## DISCUSSION

 Under Section 2 of the Federal Arbitration Act (the "FAA" or the "Act"),

arbitration agreements are generally "valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Act

establishes "a liberal federal policy favoring arbitration agreements."  New Prime Inc. v.

Oliveira, 586 U.S. 105, 120 (2019) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 24 (1983)).  The FAA "leaves no place for the exercise of discretion by a

district court," instead mandating "arbitration on issues as to which an arbitration agreement has been signed." Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

   In deciding whether to enforce an arbitration agreement, the court must determine: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement.'" In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted). The FAA requires courts to enforce arbitration agreements "according to their terms." Id. at 127. The standard of review for a motion to compel arbitration is "similar to that applicable for a motion for summary judgment." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022) (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016)). As with a motion for summary judgment, the court "considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." Meyer v. Uber Techs, Inc., 868 F.3d 66, 74 (2d Cir. 2017) (quotations and citations omitted). If the undisputed factual record supports a legal determination as to arbitrability, the court "may rule on the basis of that legal issue and avoid the need for further court proceedings." Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, 661 F.3d 164, 172 (2d Cir. 2011). After the moving party shows that "an agreement to arbitrate existed, . . . the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." Zachman, 49 F.4th at 102.

   Thus, as an initial matter, the court must determine whether there was a valid agreement to arbitrate, a question that is determined by state contract law. Vasell v. Seatgeek,

Inc., No. 24 CV 932, 2025 WL 240912, at *6 (E.D.N.Y. Jan. 17, 2025).  To form a valid contract

under New York law, there must be a "meeting of the minds" and "a manifestation of mutual

assent."  Starke v. SquareTrade, Inc., 913 F.3d 279, 288-89 (2d Cir. 2019) ("Generally, courts

look to the basic elements of the offer and the acceptance to determine whether there was an

objective meeting of the minds sufficient to give rise to a binding and enforceable contract.");

see also Bynum v. Maplebear Inc., 160 F. Supp. 3d 527, 533-34 (E.D.N.Y. 2016) ("Arbitration is

a matter of contract. When enforcing an arbitration agreement, as with any other contract, the

parties' intentions control.") (quotations and citations omitted).  Here, plaintiff does not dispute

that the Instacart ICA, which he signed electronically, contains a valid and enforceable

agreement to arbitrate claims that arise while acting in his capacity as an Instacart shopper.  (See

Plaintiff's Memorandum of Law, dated July 24, 2024, Dkt. No. 21, at 4.)  Instead, he argues that

the terms of the ICA do not apply to this incident because it occurred while he was allegedly

acting outside the scope of his Instacart duties.  (Id. (framing the "threshold question" as

"whether the accident occurred during . . . a covered claim.").)

           In deciding whether the dispute at issue falls within the scope of the arbitration

agreement, the court must "resolve any doubts concerning the scope of arbitrable issues in favor

of arbitrability."  Daly, 939 F.3d at 421; see also Bechtel do Brasil Construcoes Ltda. v. UEG

Araucaria Ltda., 638 F.3d 150, 155 (2d Cir. 2011) (explaining that any ambiguities as to the

scope of the arbitration clause must be "resolved in favor of arbitration.") (citing Moses H. Cone

Mem'l Hosp., 460 U.S. at 24-25).  Only where "it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute" may the

court decline to compel arbitration under the FAA.  Daly, 939 F.3d at 421 421 (quoting State of

New York v. Oneida Indian Nation, 90 F.3d 58, 61 (2d Cir. 1996)); see also Holick v. Cellular

4

Sales of New York, 802 F.3d 391, 395 (2d Cir. 2015) (stating that there is a "presumption of arbitrability" and that, absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," a motion to compel arbitration should be "resolved in favor of coverage.").

> Section 9.1 of the ICA states, in relevant part:
>
> [Y]ou and Instacart agree that to the fullest extent permitted by law, ANY AND ALL DISPUTES OR CLAIMS BETWEEN YOU AND INSTACART shall be exclusively resolved by final and binding arbitration by a neutral arbitrator. . . . Subject to the limitations set forth in section 9.6 [not applicable here], you and Instacart agree that the third party retailers at or in whose premises the Services under this Agreement may be performed . . . are intended third party beneficiaries of this Arbitration Provision.

 (Sunga Decl., Ex. A, § 9.1.)  As to the scope of disputes covered by the arbitration provision, the ICA states that it applies to:

> any and all disputes and claims . . . arising out of or relating to this Agreement, your classification as an independent contractor, or the Services performed under this Agreement, . . .  including . . . personal, physical or emotional injury[.]

(Id. § 9.3.)  Arbitration is also required of:

> all claims or disputes between [plaintiff] and any third party retailer arising out of or related to the Services performed under this Agreement that may be brought against third party retailer at or in whose premises the Services . . . may be performed.

(Id.)  Plaintiff does not deny that Costco is a third party retailer within the meaning of the arbitration provision.  Thus, the ICA's arbitration clause is valid and enforceable.

According to plaintiff's deposition testimony, on December 5, 2022 at approximately 10:30 a.m., he accepted a job from Instacart through the app.  (Liverano Dep. at 38-40.)  He arrived at the Costco store at approximately 10:45 a.m. and the accident occurred at approximately 11:15 a.m.  (Id. at 42.)  At no point during that time did plaintiff proceed to the

check-out lane, use his Instacart-issued credit card to pay for the customer's order, or leave the Costco store.  (Id. at 43.)  Rather, as Instacart's records show, he remained logged into the Instacart app and had an "open" order from an Instacart customer from 10:26 a.m. until 11:50 a.m., when he completed the purchase.  (See Defendant's Reply Memorandum of Law, dated Aug. 5, 2024 ("Def.'s Reply Mem."), Dkt. No. 22, at 3-4; Sunga Decl. ¶ 12.)

Instacart shoppers no doubt do other things while filling orders for their customers.  They may use the restroom.  They may talk to a friend or family member.  And they may pick up some products for themselves, or even perform services for another business so long as such services "do not hinder the performance" of services under the ICA.  (See Sunga Decl., Ex. A, § 6.5.)  None of that detracts from the primary purpose of the store visit, which is to purchase items ordered by an Instacart customer.

Plaintiff cites no authority for his theory that he was acting outside the scope of his Instacart duties while taking a brief detour to shop for himself in the dairy section, and the court's research uncovered none.  Given the strong presumption in favor of arbitrability, I find plaintiff's interpretation of the arbitration provision—that it does not apply to the exact moment he slipped and fell—implausible.  Defendant's motion to compel arbitration is therefore granted.

Defendant requests that this matter be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) and ordered to arbitration.  (See Def.'s Mem. at 10; Def.'s Reply Mem. at 6.)  In Katz v. Cellco Partnership, the Second Circuit expressed a strong preference for staying an action where all of the claims are referred to arbitration.  794 F.3d 341, 347 (2d Cir. 2015) (explaining that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.")  "Since Katz, most of the district courts in our Circuit have hesitated to dismiss

arbitrable claims, even where neither side has expressly requested a stay." Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 186 n.15 (S.D.N.Y. 2018); see also Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund, 982 F.3d 851, 858 n.2 (2d Cir. 2020) (generally, "courts should stay litigation pending arbitration to avoid converting an otherwise-unappealable interlocutory stay order into an appealable final dismissal order, thus enabling parties to proceed to arbitration directly.") (cleaned up) (quoting Katz, 794 F.3d at 345-46); Fadlelseed v. ABM Aviation JFK, No. 23 CV 4559, 2024 WL 4344790, at *8 (E.D.N.Y. Sept. 30, 2024) ("Following Katz, courts in this Circuit 'generally should stay the proceedings pending arbitration, rather than dismiss the case.'") (quoting Osorio v. CVS Pharmacy, No. 22 CV 6575L, 2023 WL 3093872, at *1 (W.D.N.Y. Apr. 26, 2023), and citing cases). Thus, defendant's motion to dismiss is denied without prejudice to renewal when the arbitration is concluded.

**CONCLUSION**

For the reasons stated above, defendant's motion to compel arbitration is granted and this case is stayed pending the conclusion of the arbitration. The parties are directed to file a joint status letter no later than July 31, 2025, updating the court as to the progress of the arbitration proceedings.

SO ORDERED.

Dated:  Brooklyn, New York
        January 31, 2025

                                    /s/
                        _____
                        ROBERT M. LEVY
                        United States Magistrate Judge